**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ANTHONY PINSON, | : | |
| Plaintiff, | : | Civ. No. 19-17227 (KM) (ESK) |
| v. | : | |
| SHARMALIE PERERA, M.D., *et al.*, | : | **OPINION** |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.**

### I.  INTRODUCTION

The plaintiff, Anthony Pinson, is a state inmate incarcerated at South Woods State Prison, in Bridgeton, New Jersey. He is proceeding through counsel with a civil rights complaint pursuant to 42 U.S.C. § 1983. Presently before the Court is a motion to dismiss filed by Defendants New Jersey Department of Corrections ("NJDOC"), Marcus O. Hicks, Willie Bonds, and Patrick Nogan (collectively, "DOC Defendants"). (DE 6.) For the following reasons, the motion will be granted.

### II.  BACKGROUND

For the purposes of this motion, the Court must accept as true the factual allegations set forth in Plaintiff's complaint. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014). They are as follows.

Plaintiff suffers from sickle cell anemia. (DE 1 at 4.) He states that while he has been in custody of the NJDOC, he has suffered from periodic episodes of pain, called "crises," which are a symptom of his disease. (*Id.*) During such crises, he requires hospitalization and treatment in the form of "powerful opioids" and blood transfusions. (*Id.*) On several occasions, when suffering a crisis, he was not taken to the hospital but only provided water and Tylenol by the prison. (*Id.*)

He was told by the defendants that he was "not allowed to have opioid pain killers." (*Id.*) During his most recent crisis in April 2019, Plaintiff was taken to the hospital and diagnosed with a bone infarction in his shin–a complication of untreated sickle cell anemia. (*Id.* at 5.) Plaintiff states that this infarction will cause him extreme pain for the rest of his life and that he is currently not being treated for the infarction. (*Id.*)

On August 27, 2019, Plaintiff filed a civil rights complaint, alleging an Eighth Amendment claim of deliberate indifference to his medical needs, as well as state law claims of negligence and intentional infliction of emotional distress. (*Id.* at 5–7.) Plaintiff names as defendants the NJDOC; the acting commissioner of the NJDOC; multiple prison administrators and wardens; Rutgers University – University Correctional Health Care; and several prison doctors, nurses, and medical supervisors. (*Id.* at 3.)

On October 15, 2019, the DOC Defendants filed this motion to dismiss the complaint. (DE 6.) Plaintiff filed an opposition (DE 1), and the DOC Defendants filed a reply (DE 17). The matter is now fully briefed and ready for disposition.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his "entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Id.* at 678.

## IV. ANALYSIS

The DOC Defendants move under Rule 12(b)(6) to dismiss the complaint for failure to state a claim. (DE 6-1.) They argue that Plaintiff has failed to plead supervisory liability; that Plaintiff has failed to comply with the pre-suit notice requirements of the New Jersey Tort Claims Act ("NJTCA"); and that NJDOC cannot be held liable via *respondeat superior* for intentional infliction of emotional distress, an intentional tort. (*Id.* at 5–11.)

### A. Supervisory Liability Under § 1983

The DOC Defendants do not include those directly responsible for the Plaintiff's care. They comprise the NJDOC and three of its administrators—Acting Commissioner Marcus O. Hicks,

Director Willie Bonds, and Administrator Patrick Nogan. The DOC Defendants assert that the complaint lacks allegations sufficient to trigger supervisory liability. (DE 6-1 at 6–7.) The complaint, they say, offers no more than conclusory allegations that they, as supervisors, were "personally responsible for the orders and/or policies" that subjected Plaintiff to extreme pain, risk of death, and development of a bone infarction. (*Id.*; DE 17 at 2–3.) Plaintiff, they say, has failed to identify any institutional policy or practice that allegedly resulted in his harm at the hands of subordinate prison and medical personnel. (DE 6-1 at 6–7.) Plaintiff responds that the DOC Defendants "personally established" a policy "designed to deprive him of hospitalization, blood transfusions, and opioid painkillers, as required for the treatment of his sickle cell crises." (DE 13 at 4.) Defendant's alleged statement that "he was not allowed to have opioid pain killers" is proffered as evidence of that policy. (*Id.*)

> Section 1983 affords a remedy for certain violations of constitutional rights:
>
>> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Personal involvement is essential to liability on a civil rights claim, and § 1983 liability cannot rest on a theory of *respondeat superior. See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Township*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

There are two potential theories of supervisory liability under § 1983. Under the first, defendants may be liable as policymakers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.' " *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory provides that a supervisor may be personally liable if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' violations. *See Baker v. Monroe Township*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

Here, the allegations of the complaint do not suffice to plead a supervisory liability claim against the DOC Defendants. With respect to a policy or custom, the complaint alleges only the following:

> Defendants Perera, Connolly, Nogan, Bonds, Hicks, and John Does 1-24 were personally responsible for the orders and/or policies that subjected Plaintiff to extreme pain and risk of death during his crises.
>
> [. . .]
>
> Defendants Perera, Connolly, Nogan, Bonds, Hicks, and John Does 1-24 were personally responsible for the orders and/or policies that subjected Plaintiff to the development of a bone infarction.

5

(DE 1 at 6.)

These bare allegations do not identify any specific policy, custom, or practice established by the DOC Defendants. Rather, Plaintiff only provides a formulaic recitation of the legal elements of his claim. Plaintiff's opposition brief submits—somewhat tautologically—that the "specific policy or policies were those that would deny Plaintiff access to hospitalization, blood transfusions, and opioids." Assuming that this constitutes an adequate factual allegation, an issue I do not reach, it is not contained within the complaint. "[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)); *Ultra Logistics, Inc. v. A First Class Sol., LLC*, No. 219CV09493JMVJAD, 2019 WL 7047243, at *3 (D.N.J. Dec. 23, 2019).

Accordingly, the DOC Defendants' motion to dismiss Count I will be granted.[1]

### B. NJTCA Presentation Requirements

The DOC Defendants next assert that Plaintiff's state law tort claims must be dismissed because Plaintiff did not file a timely pre-suit notice of claim under the NJTCA. (DE 6-1 at 9–10.) Plaintiff argues, however, that he did file a notice of claim in October 2019. (DE 13 at 5.) He cites the "continuing tort doctrine" and argues that because he continues to suffer from sickle cell crises, the deadline to file a notice of claim starts running only when the tortious conduct ceases. (*Id.*)

---

[1] The State Defendants also argue in their motion to dismiss that they are entitled to qualified immunity. (DE 6-1 at 12–13.) Having dismissed Count I for failure to state a claim, the Court need not address that argument now.

Additionally, the NJDOC is not a "person" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012). Because amendment would be futile, the dismissal of § 1983 claims against the NJDOC is entered with prejudice.

Under the NJCTA, a plaintiff has ninety days "after the accrual of [his] cause of action" to file his pre-suit tort claim against a public entity. N.J. Stat. Ann. § 59:8-8. The purpose of this notification period is to provide the public entity the opportunity to: "(1) conduct an administrative review and negotiate settlements; (2) investigate and prepare a defense; (3) correct any conditions or practices giving rise to the claim; and (4) obtain advance notice of potential liabilities." *Davis v. New Jersey Dep't of Corr.*, Civ. No. 10-6439, 2011 WL 5526081, at *12 (D.N.J. Nov. 14, 2011) (citing *Beauchamp v. Amedio,* 751 A.2d 1047, 1052–53 (N.J. 2000)). The notice provision is a "jurisdictional precondition to filing suit" and a plaintiff "is required to file the notice of claims before he *initiates* any state law tort action." *See Niblack v. SCO Malbreen*, Civ. No. 15-5298, 2016 WL 1628881, at *4 (D.N.J. Apr. 25, 2016) (emphasis in original); *see also Rogers v. Cape May Cty. Office of Pub. Def.*, 31 A.3d 934, 937 (N.J. 2011) (holding that the NJTCA includes "a mandatory pre-suit notification of claim"); *Ptaszynski v. Uwaneme*, 853 A.2d 288, 294 (N.J. Super. Ct. App. Div. 2004). Failure to comply with the notice provision may result in a claim's being barred. N.J. Stat. Ann. § 59:8-8.

Courts within this district have therefore dismissed NJTCA complaints that fail to allege compliance with the pre-suit notification requirement. *See Polynice v. New Jersey Dep't of Corr.,* Civ. No. 19-16875, 2020 WL 2764818, at *6 (D.N.J. May 28, 2020) (dismissing NJTCA claim where complaint did not allege that plaintiff filed notice of his claims); *Van Valen v. Lanigan*, No. 18-11441, 2020 WL 859330, at *5 (D.N.J. Feb. 21, 2020) (same); *Niblack*, 2016 WL 1628881, at *3 (same). Even where such a motion is brought under Rule 12(b)(6), certain courts have construed it as a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), "because the State has conditioned its waiver of sovereign immunity on compliance with [NJTCA] procedures." *Polynice*, 2020 WL 2764818, at *6 (citing *Baldeo v. City of Paterson*, Civ. No. 18-5359, 2019 WL

277600, at *5 n.6 (D.N.J. Jan. 18, 2019)). And of course "[a] pleading that states a claim for relief must contain . . . the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a).

Here, the complaint fails to allege compliance with the pre-suit notice provision of the NJTCA. Plaintiff states in his brief that he filed such a notice of claim in October 2019, but again, statements in briefs do not serve to remedy defective allegations. In addition, I note that this action was filed on August 27, 2019. The filing of a notice of claim in October 2019, assuming it occurred, would not satisfy the NJTCA's requirement that notice be given *prior* to filing suit. *See Niblack*, 2016 WL 1628881, at *3 ("Plaintiff must demonstrate, at the time he filed the Complaint, that such notice of claims had already been served [on the defendants].")

Accordingly, the DOC Defendants' motion to dismiss the state law tort claims will be granted.

### C. Intentional Infliction of Emotional Distress

In his claim for intentional infliction of emotional distress ("IIED"), Plaintiff alleges that the NJDOC, as the employer of Defendant Doctors Sharmalie Perera and Sandra Connolly, is "liable via the principle of respondeat superior for [his] severe emotional distress." (DE 1 at 6–7.) The DOC Defendants argue that the IIED claim must be dismissed because vicarious liability for this intentional tort is barred by the NJTCA. (DE 6-1 at 11.) Plaintiff did not respond to this argument in his opposing papers. (*See generally* DE 13.)

Under the NJTCA, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Hoag v. Brown*, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (citing N.J. Stat. Ann. § 59:2–10). "Thus, there can be no vicarious liability by a public entity for intentional torts committed by its

employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Id.*

Here, the NJDOC is a public entity and IIED is an intentional tort. Therefore, the NJDOC cannot be vicariously liable for IIED. *See Biaggi-Pacheco v. City of Plainfield*, Civ. No. 16-3511, 2017 WL 4618751, at *5 (D.N.J. Oct. 13, 2017); *Ward v. Barnes*, 545 F. Supp. 2d 400, 420–21 (D.N.J. 2008) (holding that under N.J. Stat. Ann. § 59:2–10 "there is no legal basis for permitting respondeat superior liability to public entities on the theories of battery and intentional infliction of emotional distress, which are acts that require 'actual malicious or willful misconduct.'") Accordingly, the DOC Defendants' motion to dismiss the IIED clam against the NJDOC will be granted.

## V.     CONCLUSION

For the foregoing reasons, the motion to dismiss filed by the DOC Defendants (DE 6) will be GRANTED. The Eighth Amendment claims against the DOC Defendants and the state law claims will be dismissed without prejudice. Because amendment would be futile, the claim against the NJDOC for IIED and any claims against the NJDOC under 42 U.S.C. § 1983 will be dismissed with prejudice. An appropriate order accompanies this opinion.


DATED:  June 30, 2020

/s/ Kevin McNulty
_____
KEVIN MCNULTY
United States District Judge